Good morning, Mark Prada for the petitioner. May it please the court that I present to you, Mr. Esteeven Point Du Jour, the U.S. Attorney General's case number 18-15235. The petitioner's grievance in this case is that his trial counsel lacked communication and lacked diligence. These claims arose well before the order of removal was entered, and the petitioner did his best to confront the trial counsel about this over numerous phone calls, and his trial counsel did his best to evade the petitioner. The statement states that my client called approximately 50 times to the office, and three times, in order to speak to his lawyer, he had to pose as a potential new client in order to make it through the phones. And when he was able to actually speak to his lawyer, he was told that, I'm sorry, I have a hearing or an equivalent excuse, and that a callback would be made, and the callback was never made. These communications, coupled with the lawyer's evasion... Mr. Prada, let me ask you a question about timing issues, just so I can get them straight in my head. When did Mr. Du Jour file the bar complaint against his former counsel? My understanding, it was after he sought out the new counsel for the appeal, which would have been after the removal order. Right, but do you have any, are there any dates in the record about exactly when the bar complaint was filed, like the month and the year? The record, I'm looking for the copy right now. It's at tab G, pages 133. My apologies, I'm just trying to find it right here. I could tell you when it's dated, but I don't know the exact date it was filed. That's okay, if you can look for that while your colleague is up for his part of the argument, then you can let us know when you get up for rebuttal. Well, I just found it on page 135 of the record. The bar complaint is signed, dated November 1, 2017, so that would have been shortly after the removal order, which was October 19. So, I believe this was in the 30-day period before the appeal was filed with the BIA. So, returning to my theme, these communications coupled with the lawyer's evasion, our argument is that this is full compliance with Prong 2 of Lozada. And the fact that the complaints were filed with the bar does not detract from the fact that my client made numerous attempts to communicate with his lawyer in order to air his grievances, and that the lawyer did his best to avoid that confrontation. And I would note that Prong 3 of Lozada does not necessarily require a bar complaint as long as you can adequately explain why one was not filed. But the fact that my client filed a bar complaint does not make the standard for Prong 2 increase. If anything, it might allow for some flexibility in Prong 2. So, that's why now we turn to the concept of substantial compliance. If the court does not agree that there is full compliance as to Prong 2 of the Lozada requirements, we would submit that my client substantially complied with Prong 2. On that Prong, Mr. Prada, if we agree with you that just substantial compliance is required, what do you do about our prior decision in GBAYA, I think I'm pronouncing it correctly, G-B-A-Y-A versus Attorney General, which is cited at 342 Federal Reporter 3, 1219 from 2003. In that case, as I read it, we held that a petitioner did not substantially comply with Lozada for two reasons. One, he did not provide evidence about his agreement with his former counsel. And number two, he did not provide evidence that he informed his former counsel or gave him an opportunity to respond to the claims of ineffective assistance. Why doesn't the second part of GBAYA make it really difficult for you to prevail here? So, GBAYA was different from this case because here there's no dispute that my client has satisfied at least two out of the three prongs. In GBAYA, if you look at footnote 2, the court decided that basically since two of the three prongs were never met, right, that you can never state a claim under Lozada. So I think the rule that GBAYA stands for is that if you comply with one out of three prongs, that's not going to suffice for a substantial compliance prong. This is Judge Anderson with a question. It seems to me that the gist of our GBAYA decision is that the burden is on the plaintiff, the petitioner, and his counsel to satisfy these Lozada requirements. And you are, just like GBAYA, it seems to me, trying to shift that burden. And it frankly would be a whole lot easier for you, a petitioner, especially one with counsel as here, to either just write a letter to the lawyer and explain the complaints and ask him to respond. Or if you're talking about what you're in effect saying is that the BIA could have called the bar where the complaint was filed and found out whether they notified the attorney. But it's a whole lot easier for you, especially with counsel, to do that than require the BIA to do that. It seems to me this is right square under the rationale of GBAYA. Well, Your Honor, we have two points on that. The first is we're not arguing that the BIA should have contacted the Florida Bar. And in this case, it was actually DHS who did that on their own. So one of the things the BIA held is that these statements from BIA are not evidence, but I would proffer that that's a concession on the part of the BIA that this was in fact filed with the bar. And then under the bar rules, and this is the same with the EOIR rules, the Immigration Court rules for filing a complaint, because my client filed complaints with both, it's up to the bar counsel to decide whether the inquiry is open and a move forward. Right, but returning to GBAYA, I would note that on the third to last paragraph, the final sentence is that essentially GBAYA is arguing he need not comply at all with Lozada because Lozada is designed to weed out meritless claims and his claim has obvious merits. So what's going on is that we're arguing that if you make the showing that two out of the three of the prongs have been perfectly met, and as to the third prong, if your compliance is substantial but not exact, and that's the language coming from Dakane a later case, that that's sufficient. And in GBAYA's case, basically the argument is that they didn't need to meet any of the prongs, at least based on how I'm reading this third paragraph from the end. And I believe footnote two makes it clear because there was some dispute about whether the petitioner in GBAYA satisfied the third prong, but the court held that since the first and second prongs were not met at all, there's no need to do that, or to inquire about the third prong. So then really the whole thing here, if you're trying to look at it, because substantial compliance was not adopted in this case in GBAYA. It wasn't until the following case in Dakane. This is Judge Anderson again. I'm not sure that you understood my question, and I don't think I made it clear. I would assume arguendo that substantial compliance is sufficient, but that when it's so easy for the petitioner here to simply notify counsel or find out himself what the bar did and whether they notified counsel, it seems to me that it would not make good law or good sense to impose that duty on the BIA rather than the petitioner when it's so easy for the petitioner. I understand the court's concerns. So part of that is that we don't think that the bar complaint was even necessary in this case. Because the client's statement, and there's no dispute about the facts in his statement, was that he made several attempts to contact his lawyer, and this lawyer basically engaged in purposeful evasion. So the lawyer did his best to frustrate this possibility, and as we argued in the beginning, the lack of communication and diligence, this was an ongoing problem. This isn't just at the point where a removal order is entered without even a trial being held. This was about 11 months of this problem, and the client was doing all he could. So maybe if we look at the grievance in two parts, right? The part that the lawyer never communicated with his client, never took the time to prepare for a hearing. The problem in my mind with your line of reasoning is that the purpose behind prong two of Lozada is that the BIA, in order to make a preliminary judgment about ineffective assistance of counsel, should have the response by the attorney. So that what prong two does is require a petitioner to notify the counsel and invite a response, and thereby the BIA will have two sides of the issue and make a decision as to whether to remand to the IJ for hearings about ineffective counsel. Mr. Prado, this is Judge Choklat. I have a question for you, if I may interrupt. Are you familiar with Dakane versus the Attorney General? Yes, I am. Okay, this is what we said. In this particular case, it was not disputed by the parties that Dakane substantially complied with the procedural requirements of Lozada. The issue here is whether we should agree with the BIA's further requirement in Lozada that an alien such as Dakane must prove that his counsel's deficient representation resulted in prejudice to him. There's nothing in this record about the prejudice issue, and one of the reasons why you have to give the lawyer notice and a chance to be heard is there may well be no prejudice, because the lawyer already discussed the situation with his client and decided not to pursue whatever the client wants to now. But there's nothing in here about prejudice, so how are we supposed to reconcile this case with Dakane? So the board has never denied that there was prejudice in this case? There is no demonstration of what effective assistance of counsel would have done in this case. The difference here, if the lawyer had complied with the filing deadlines, is that my client would have had a merit hearing. No, no, there's no allegation in this case as to what prejudice an effective lawyer would have done. I think it's implicit, at the very least, that a competent lawyer would have met with the filing deadline. And yes, you can make extensions on filing deadlines, and that's normal, of course, but the first two extension requests were both tardy, right? The question is, what is the prejudice? The prejudice is that the client never had an opportunity to make his case with the immigration judge. Okay, what would he have pursued? What would a good lawyer have put in that would have prevented your client from being removed? He would have filed the applications properly. First of all, he would have submitted all the evidence that's needed to make the showings in those cases. But there's nothing in the record that tells us that. There's the client's statement, and I understand that the attorney at the BIA level did not put together a full trial packet of what would have been the evidence. No, but you could have put it in your brief. Well, okay, in the record, the attorney before the board submitted the forms, right? So the basis, that should have been enough to allow the immigration judge to proceed to actually hold the trial, right? Are you arguing that he doesn't have to show prejudice? No, we are arguing that the prejudice is that he... That there would have been a different result, likelihood. Yes, and that the different result is that he would not have been removed summarily without a hearing on the merits of his case. And what would the hearing have involved? Well, as is in his statement, he states that he has a child with some medical issues. He has a wife that he supports. I don't know if it's in the record, but my client, he owns a business. He owns a used car dealership. So he could have showed economic hardship in addition to his statement regarding the medical hardship to his child. I know that there isn't a full documentation that one would present at a hearing on the appeal. But that's the point of having an immigration court hearing on a trial where you have the opportunity to bring witnesses and to bring your case forward. Because if we look at the deadline that the immigration judge set, she set the case in January, the filing deadline for January for a November hearing. An October hearing. And then she set that deadline from a prior hearing that was set in November. So the lawyer had two months and more because of the extensions he obtained to submit documentation. And whereas the attorney at the BIA level, she had 30 days to file a notice of appeal. And then once the briefing schedule came in from the board was to reply in writing. So what we're arguing is that this man, he never had an opportunity to make his case and to basically request discretionary relief from the immigration court. It was a summary denial. He is prima facie eligible. There is the I-130 petition in the record. There is a copy of a notice from USCIS that gives the receipt number. And plugging that information into the USCIS website shows that that petition was approved many years ago. So he is eligible for a readjustment prima facie. And since his wife is a United States citizen, he already has a qualifying relative by definition. So he is on the face of the record eligible and should have been eligible to have a hearing. But for the fact that the lawyer waited until three weeks before the trial to inform the immigration judge to say, Oops, I'm sorry, I didn't do my job, which I was supposed to do back in April. And that was in October when that occurred. And this is so far below the level of a competent attorney that the Ninth Circuit does have some case law regarding a presumption of prejudice that is rebuttable when an attorney fails to file necessary documents. And in this case, the bare minimum that the attorney should have filed in April were the forms, which we can see that were filed in October at the bare minimum. Right. So that didn't even happen. Nothing was filed. Nothing on time was filed. So we're arguing that that is the prejudice because this man was basically robbed of his right to present his case. And he was working to ask his attorney to do his job. And it never occurred here. And to return to the, I think the question was about the conning, right? The conning, the issue was about prejudice. And I have that paragraph that Your Honor was reading. On the following paragraph, the court held, we agree with the Ninth Circuit that in addition to substantial, if not exact compliance with the requirements of Lozada, then that he must also show the prejudice. And I would remind the court that the BIA never denied this case on prejudice. And under the Chenery Doctrine, the board can only be affirmed on the basis that it articulated in its decision. So that issue is not before the board. And we also proffered that as occurred in the Hamid So case, that when the board did not dispute that, that it should be considered waiving. And Hamid So, it was the reverse where it was a prejudice case. But then the government raised the issue of the Lozada requirements during the oral argument. That's at minute 10. And then the petitioner responded at minute 23 in the oral argument. And the court eventually ruled in the petitioner's favor and remanded all the way to the IJ. So there wasn't even a remand to the board. So we would ask that with respect to the prejudice wrong, that the court would do the same. Since the board never disputed that point. And if I recall correctly, neither did the DHS in its briefs to the BIA. But looking at the Connie and Gabbayat together, I believe that the court has adopted a substantial compliance test. It just has not defined what substantial compliance is. And substantial compliance must be less than full compliance with all three prongs here. So if my client did not show full compliance with prong two, it's not disputed that he fully complied with prong one and three. And at this point, we're arguing that he complied with two enough. And the argument could be that if you comply with two out of the three prongs, that is substantial compliance. But we're really arguing, in a sense, we've complied with two and a half. Because we perfectly complied with prong one and three and that we've sufficiently complied with prong two. Where the attorney had a pattern and practice of evading conversations with the client. And there comes a point where enough is enough. You need to move forward. And we would proffer to the court that my client is made by showing in this case. All right, Mr. Prada. Thank you very much. Thank you. Mr. Basharoff. Good morning. Jacob Basharoff on behalf of the Attorney General of the United States. The board did not abuse its discretion when it denied Mr. DeGioia's motion to remand. Because he failed to present evidence to the board showing that his former counsel, Mr. Bogg, was informed of the allegations against him and had an opportunity to respond to the allegations. Which is the second prong of the Lozada requirement. There is no independent evidence outside of Mr. DeGioia's declaration that Mr. Bogg was informed about the allegations against him. So if we look at the declaration, and then directing the court's attention, page 129 of the record. Item, the line number 20, the paragraph actually, number 20. It says that the last contact that Mr. Bogg and Mr. DeGioia had was on October the 25th of 2017. And after that, if we go to 21, to paragraph 21, it says, after speaking to other counsel, I believe that I was ordered removed because Mr. Bogg did not turn in my application to the court in time. Right? So there's nothing that would indicate that he informed his former counsel, Mr. Bogg, about the allegations against him. Well, let me ask you this question. This is Judge Jordan. If a lawyer fails to file documents, pleadings, motions on a timely basis, and the client's claim is dismissed for that reason, what possible excuse could the lawyer give to that sort of conduct? I understand. It depends. So, generally, let's say, let's hypothetically say that everything in the case, right, so that the client paid in time, they had a meeting, they filled out an application, they agreed to all the terms and conditions of their, according to their, the contract that they signed, the retainer agreement. That might be, as well, insufficient performance by counsel. Right? However, we have to look at the, under the circumstances presented in this case, right, if we look at the motion to extend respondent's filing deadline, Mr. Bogg filed two of those, right? So, before the immigration judge set the deadline for April the 28th. Right? So, if we look at the one filed on February the 2nd, it says the following thing, and I'm directing the court's attention to page 406 of the record, and it's the second paragraph. It says, for financial reasons, respondent has not yet filed these applications. Right? So, and it says also that that being said, respondent is working hard to put together funds to get these forms filed in the very near future. So, the issue in this case, at least as it appeared to be when the extension was initially requested, was financial. So, he doesn't dispute that. Now, let's go to the second motion filed on April strike debt on March the 16th. Right? Once again, the extension is requested because there are financial difficulties that petitioner has in the case. Right? With the evidence that was late filed. Right? So, there are two minor orders. Both of them were obtained on October the 9th, 2017, and I direct the court's attention to page 396 of the record. And then there was a personal check. I'm not sure if it's a, well, I guess it doesn't say it's a law firm check, but it appears to be a personal check by Mr. Bogg. That also was drawn on October the 9th. So, I guess in this situation, without the response from petitioner's counsel, former counsel, it would be guesswork and speculation as to what exactly happened. And that's why there's a second Lazada requirement to steer the board from guesswork. From really trying to assess the evidence when there's no response from former counsel. And I think that's what the 11th Circuit case will assess. While it recognizes that strict compliance, perhaps, is not the best thing in all the cases, but there should be some compliance. The record shows that Mr. Bogg overall appeared at all the hearings and zealously represented Mr. DuJour when he moved to terminate their immoral proceedings. Additionally, a board complaint filed against Mr. Bogg does not clearly explain what happened in Mr. DuJour's case to conclude that Mr. Bogg was ineffective. So, if we look at the Florida board complaint, it has one paragraph. It says that he was not returning my phone calls and he never filed the applications for release. It doesn't really discuss the agreement that he and Mr. Bogg had, petition Mr. Bogg had, and what exactly Mr. Bogg was supposed to do in his case. And what, if anything, he failed to do. The only thing it makes is this allegation that, without real support from any other evidence, that Mr. Bogg was supposed to file those applications. But we don't know. And in light of the fact that the record shows that the petitioner had financial difficulties, whether he in fact paid his counsel. The claim in effective assistance of counsel is further undermined by the lack of an attorney-client agreement that would help to understand the scope of Mr. Bogg's representation in the case. And I also would like to point out that, as was discussed by petitioner, petitioner, current petitioner's counsel and the court, the court's decision, goodbye, that really supports the respondent's position in the case. That it's important to comply with the Lazada requirements. You know, if we accept petitioner's argument, then the Lazada makes no difference, because then out of the three requirements, we have just one requirement. And that should be kind of substantial compliance, but not compliance, and it depends whether they want to comply or don't want to comply. And it's important not only to protect petitioner's rights, but also important to have due process for petitioner's counsel. And really, not to shift the burden to the board to collect evidence, right? It was, as I believe it was Judge Anderson pointed out, it was an easy thing to just write a letter to former petitioner's counsel, and if he would fail to respond to that, that would be evidence that there was a compliance with the second point. But there's no such evidence, and there's no explanation why it was so difficult to draft this letter, explain what the issue was, and just send it to him. Now the bar, this is Judge Jordan again, the bar complaint was dismissed after a finding of no probable cause, right? That's what the government counsel said. If that's what they said, I didn't independently verify that. So if that's what they said, let's assume that it was dismissed. Well, that's what counsel for the government represented at the BIA, right? That's correct, but the board did not really accept that as evidence. So I'm in a difficult position because if counsel for the government, if they said it, they probably independently verified, and it might have been that it was dismissed. But in this case, the board did not rely on it. What did your predecessor counsel for the government cite with respect to that dismissal by the Florida bar? I believe he just said on page 8 of his brief that the bar complaint was dismissed on February 28, 2018 after a finding of no probable cause. But I don't see any evidence or any sort of information how he found out this information. All right, thank you very much. I would like also just one, I guess, final point in the case is that as far as the application and the prejudice issues that while the board did not discuss it, but the court raised it, and I just want to point out that petitioner needs to show liberty interest in order to have discretionary, to be able to show eligibility for discretionary relief or adjustment of status and waiver. Both of these applications are discretionary, right? So there's, I mean, he doesn't have liberty interest in discretionary relief. But if he, but let me play devil's advocate for a minute if I could. If the allegations, if the allegation is properly supported under Lozada, and the allegation is that the lawyer completely failed to file anything by the required deadlines, and the client was prima facie eligible for discretionary relief, shouldn't that be enough to get a merits hearing on the ineffectiveness claim? So I guess if I can separate the two claims. So if he showed, once again, but it's a discretion of the agency. So he cannot show that, he cannot show prejudice if he doesn't have liberty interest in the waiver. So you're saying you can never have an ineffectiveness claim with respect to discretionary relief? You can't have, but I guess that's one of the things they need to show that they have to, they need to have to show, they need to show that they have liberty interest. So what I'm trying to say is that that's not, you know, part of the calculus in this case. I mean, there was no discussion with respect to the prejudice and then whether they actually demonstrated that they have liberty interest. So that's another point that I guess that was, that isn't the case. We're talking about discretionary relief here. So if there are no further questions, the court should deny the petition for review because the board did not abuse his discretion when he denied petition, petitioned his motion to reopen because he failed to comply with the second poem of the Lozada reclaimed. All right, thank you very much. Thank you. Okay, Mr. Prada, you've got your rebuttal time left. Yes. Your Honor, with regard to the failure of the attorney to meet the deadline, the government counsel seems to suggest that this could be my client's fault rather than the fault of the lawyer. I believe that the immigration judge's ruling explaining the procedure of the case would negate any possibility of such an inference. But I would note that if you're an attorney and you have a client who is not meeting their obligations, your proper recourse is a motion to withdraw, not to just fail to meet deadlines. Right. And since this attorney made an appearance in the immigration court and the statement does outline the scope of the agreement and that the attorney was going to, quote, get the green card back for my client, that shows that the attorney, the scope of the representation was defense in the removal proceeding. And again, once you file an appearance in an immigration court or any other tribunal, you're on the hook as a lawyer and you must represent your client up until the point that you're permitted to withdraw or the case is over. Right, so on those two points, the fact that this attorney never moved to withdraw at any point shows that it's not my client's fault. And even if it was conceivably possible that something behind the scenes was going on, this attorney should have moved to withdraw. And you could do so in a way where you don't prejudice the client and not state your full reasons that you could assert to the court that under my professional obligations I need to withdraw, but that didn't even happen at all. So the inference is that my friend for the government would like the court to adopt, there's no basis in the record to support that. As to the argument just raised for the first time about the liberty interest, I would just note to the court that one, again, the board never made a ruling on the prejudice inquiry under Chenery Doctrine, that's not before this court. And we also argue that the DIA basically waived that argument and floated DHS because I don't believe they have a reason in their briefs. And more than that, an exact argument that they just made was rejected by the Third Circuit on April 27th in a case called Calderon-Rosas. The Third Circuit's case number is 19-2332. And I would also note that at the very end of the Connie, this court was discussing that there is a rebuttable presumption of prejudice when an attorney in that case was failed to file any brief in the appeal, which effectively deprived the alien of the proceeding entirely. So here, the lawyer failed to file even a bare-bones application, which effectively deprived my client of a merits hearing entirely. So I would offer to the court that the presumption of prejudice rises. And as to the filing fees, when an immigration judge sets a call-up date, a filing deadline for forms, you can submit the form and make the payment to USCIS later because those are payments not to the immigration court. And really what happens is when you go to the merits hearing, the judge will ask the government counsel whether the background checks have been done. This is Judge Anderson talking. You never answered my question. Assuming the test is substantial compliance, why is there substantial compliance here when it's so easy for the petitioner to simply write a letter to counsel and ask for a response? And that would give the BIA at least the other side of the case. Why is that not very reasonable to require? In the normal case, yes. But in this case, the facts are one that are rare. And due process is a flexible concept. So I believe that we have to deal with the totality of the circumstances and look at what happened here. Our position is that even without the bar complaint, just the efforts to contact this lawyer by the client, which is in a sworn statement, and he outlines the responses of the lawyer, and that he has to pose as a potential new client to speak to his lawyer, only to be turned away. We argue that those facts are so egregious that this is substantial compliance because the client was at a point that he did everything within his own power. And if the court is to hold that the attorney before the BIA should have made an email to the trial counsel, let's say, that would convert the substantial prejudice wrong into strict compliance in this case based on this fact pattern. So we're not asking for a broad holding that you don't have to do a bar complaint or serve a copy on the trial counsel. We're just saying that under this fact pattern, of this case specifically, that Mr. Pontejora did enough is the argument. And in making that point, I think that we've kind of noted the circuit split between the Fourth and the Ninth and the Seventh Circuit in this case. So the Seventh Circuit strict compliance test seems to be founded on the presumption that there is no right to effective assistance of counsel under the Fifth Amendment, whereas this court has long held that there is as such. And I believe in Gabbayer de Convy's case to the Mejia-Rodriguez case. So the layout of the case on this circuit differs significantly from the Seventh Circuit, which is the one that requires strict compliance. And also the Fourth Circuit case that we cited, Berry v. Gonzalez, it notes the split. And it also points out that, I believe, the Second Circuit and the Third adopted substantial compliance tests. And they cited to this court's case in De Conny as also being on that side of the aisle. All right, Mr. Prada, thank you very much. I think we've taken you way over your time, and we need to get to the final case. But thank you very much. Thank you, Your Honor.